UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE


CIVIL ACTION NO. 07-74-GWU


JOHN G. CRUM,                                                                          PLAINTIFF,


VS.                                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                                    DEFENDANT.


### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)? If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to

1

07-74  Crum

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively

established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert

6

accurately portrays the plaintiff's physical and mental impairments.  <u>Varley   v.
Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, John G. Crum, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of back and neck pathology and heart pathology.  (Tr. 21).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Crum retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 22-5).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 49 to 52, high school education, and work experience as a coal miner could perform any jobs if he were limited to "medium" level exertion as well as having the following non-exertional restrictions.  (Tr. 458).  He: (1) could never climb ladders or scaffolds; (2) could occasionally climb stairs; (3) could frequently balance, stoop, crouch, kneel, or crawl; and (4) needed to avoid overhead work with his left upper extremity.  (Id.).  The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies.  (Tr. 458-9).

On appeal, this court must determine whether the hypothetical restrictions selected by the ALJ are supported by substantial evidence and that they fairly depict the plaintiff's condition.

Mr. Crum alleged disability due to pain in his back, neck, and left leg as the result of a rock fall in a coal mining accident.  (Tr. 444-5).  He had difficulty bending over to tie his shoes, and even performing everyday motions, and felt that he could not lift more than ten pounds, stand for 20-25 minutes, or sit for 30 minutes.  (Tr. 446-8).  He had few daily activities.  (Tr. 449).  Other problems included deafness in his left ear, a right hand injury which affected his grip, and chest pain two or three times a week.  (Tr. 448-9, 451-2).  His treating physician was Dr. Lafferty.  (Tr. 447).

Medical evidence in the transcript includes office notes from Dr. Lon Lafferty dating back well before the alleged onset date.  Dr. Lafferty's notes reflect that he treated Mr. Crum for pain in his upper back and neck and low back with radiation into the left leg after the 2002 mining accident.  (E.g., Tr. 239).  For a time, he referred his patient to Dr. Loey J. Kousa, who obtained MRIs.  An MRI of the lumbar spine was within normal limits, but an MRI of the cervical spine showed herniations at C5-6 and C6-7.  (Tr. 117, 119).  Dr. Kousa's office notes appear to be somewhat incomplete, but in April, 2003 he allowed Mr. Crum to return to work "if he desires to do so" without "lifting or pulling."  (Tr. 134).  He did not specify numerical limits on the amount of lifting or pulling that would be acceptable.  (Tr. 130).  Mr. Crum continued to be treated by Dr. Lafferty, who found tenderness, moderate muscle

spasm, a limited range of motion and positive straight leg raising upon examination in October, 2003.  (Tr. 220).  He advised his patient against heavy lifting, tugging, or straining (Id.), and after continuing to find neck tenderness with muscle spasms, in February, 2004, Dr. Lafferty stated that he would consider a referral to pain management.   (Tr. 216).   He submitted two residual functional capacity assessments, both of which limit Mr. Crum to lifting ten pounds occasionally and less than full-time sitting and standing.  (Tr. 205-13).

Another examining source was a neurosurgeon, Dr. Denes Martonffy, who examined the plaintiff on referral from Dr. Lafferty.  He found posterior cervical tenderness, bilateral posterior lumbar tenderness and active and passive movements of the lower extremities to be painful.  (Tr. 348).   He reviewed the cervical spine MRI from October, 2002, opining that it showed significant disc ruptures at three levels and slight spinal cord impingement.  (Tr. 347).  He also felt that the lumbar spine films showed disc ruptures, and requested that the plaintiff obtain new MRIs.  (Id ).  These were not completed due to "scheduling difficulties," and Dr. Martonffy raised the possibility of epidural steroid injections, but the plaintiff declined for the time being.  (Tr. 346).[1]  Dr. Martonffy prescribed the medications Lortab and Flexeril.  (Id.).  The plaintiff was also evaluated for a period of several years by Dr. Katherine A. Hoover at the Williamson, West Virginia, Wellness Center,

_____

[1]Mr. Crum testified that he had to stop going to Dr. Martonffy due to transportation difficulties (Tr. 446).

apparently for pain management.  (Tr. 368-403).  Although most of the office notes are cryptic, in January, 2005, Dr. Hoover noted that Mr. Crum was applying for disability because of his back and neck problems, and had had back pain radiating to his hips so severe that it interfered with activities of daily living and he was unable to bend or lift without increased pain.  (Tr. 378).  He also complained of chronic neck pain.  In her opinion the lumbar MRI was within normal limits, but the cervical MRI showed "fairly significant" herniated discs.  (Id.).  Her examination showed that his neck was "quite tender" with bilateral spasms worse on the left and limited flexion and extension.  The lower back was tender with spasms as well, with forward flexion limited to 45 degrees, extension to 5 degrees and bending to the right and left limited to 10 degrees.  She recommended that he continue his medication which included Lorcet, Fioricet, and Soma, and added "I recommend that the patient be given disability because of his significant musculoskeletal problems."  (Id.).  She continued to note cervical and lumbar tenderness upon examination in July, 2005. (Tr. 369).

Dr. Mark Burns conducted a consultative examination of the plaintiff at the request of the Commissioner on May 4, 2005.  (Tr. 358).  Dr. Burns was apparently not given any medical records to review, and recorded the plaintiff as denying that he had had any MRIs performed.  (Tr. 359).  His physical examination was normal, other than decreased sensation in the fifth finger of the right hand (Tr. 360), and Dr.

Burns completed a residual functional capacity assessment stating that there were no functional restrictions.  (Tr. 360-5).[2]

The ALJ submitted interrogatories to a non-examining medical expert (ME), Dr. Stanley Askin.  Dr. Askin, an orthopedic surgeon (Tr. 419), limited his evaluation to the plaintiff's musculoskeletal condition only (Tr. 413).  He stated that the plaintiff's physical impairments were only "degenerative" changes of the lumbar spine, neck, and thoracic area, left shoulder pain and multiple joint complaints due to being middle-aged.  (Id.).  He felt that the plaintiff had disc herniations "per MRI" but "without clinical findings."  (Id.).  Asked whether Dr. Lafferty's limitations were supported by treatment notes or other evidence in the file, Dr. Askin responded, "Not really," and went on to speculate that the doctor had asked the patient how much he could do and his response was incorporated as the residual functional capacity.  (Tr. 414).

The ALJ briefly summarized the medical evidence, with an emphasis on the report of Dr. Burns and no mention of Dr. Hoover and her recommendation of "disability."  (Tr. 20-1).   He rejected Dr. Lafferty's assessment as not being supported "by his own treating notes or the rest of the evidence," and because Dr. Askin did not find them to be supported, either.  (Tr. 22).

---

[2]The plaintiff suffered an injury to his right hand in November, 2002, which caused numbness and loss of motion.  (Tr. 120-4).

07-74  Crum

The ALJ's discussion fails to meet the standards for rejection of a treating physician opinion.  Even if the opinion of Dr. Lafferty as a treating physician was not controlling, it was entitled to great deference.  The ALJ must consider a number of factors such as the length, frequency, nature, and extent of the treatment relationship, the supportability and consistency of the physician's conclusions, his specialization, and any other relevant factors.  Wilson v. Commissioner of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).  In addition to carrying out this analysis, the ALJ must give "good reasons" for rejecting the treating source opinion in order to allow the claimant to understand the reason for the ALJ's decision and to allow for meaningful appellate review of the ALJ's application of the treating physician rule.  Id.  The Sixth Circuit has recently held that a mere statement by the ALJ that the evidence does not support the limitations suggested by the treating physician does not satisfy the requirement of Wilson.  Rogers v. Commissioner of Social Security, 486 F.3d 234, 245-6 (6th Cir. 2007).  In the present case, Dr. Lafferty had access to the MRI reports, his office notes listed positive physical findings, and he referred his patient to specialists, including a neurosurgeon and a pain management clinic.  Even if a reasonable case could be made for totally rejecting his physical restrictions, the ALJ's decision made no attempt to do so.  Consequently, a remand will be required on this ground.[3]

---

[3]The plaintiff argues that the ALJ should have recontacted the treating source as provided at 20 C.F.R. Section 404.1512(e) before rejecting his opinion.  This section of the regulations concerns situations in which additional evidence is needed from the

07-74  Crum

Moreover, Dr. Martonffy, a specialist who saw the plaintiff on three occasions, felt that his condition was at least serious enough to warrant pain relieving epidural steroid injections as well as narcotic pain medication, factors that tend to support Dr. Lafferty's opinion.  Dr. Hoover also prescribed narcotic pain medication, and while her opinion that the plaintiff should be on "disability" is a vocational conclusion outside a physician's area of expertise, it also supports Dr. Lafferty's opinion more than it detracts from it.  Neither the ALJ nor the ME mentioned Dr. Hoover.  Dr. Askin provided little more basis for his opinion than the ALJ.  He assumed, without any way of knowing, that Dr. Lafferty was merely repeating the plaintiff's allegations; there is nothing on the face of the documents which establishes this assertion.  The opinions of the ALJ and the ME are certainly consistent with that of Dr. Burns, but as a one-time examiner without access to any of the medical records, including the MRIs which were available to other sources, and which clearly were available to the state agency by this point, Dr. Burns was the least well placed of all the examiners to give a definitive opinion.[4]

---

treating source to make a decision.  In the present case, it is not clear what additional evidence would have been needed from Dr. Lafferty, who had already provided his office notes, given his opinion, and given the medical basis for his opinion.  As the Commissioner notes, the requirement to recontact the treating source is not triggered merely because the ALJ disagreed with the physician's conclusion.  Commissioner's Motion for Summary Judgment, Docket Entry No. 10, pp. 8-9.

[4]The court has previously been critical of the agency practice of referring claimants for consultative examinations without any accompanying medical evidence, although that evidence would clearly be highly relevant to the consultative examiner in rendering an opinion.

07-74  Crum

In addition to the inadequacy of the treatment given to the treating physician's opinion, there is an additional issue regarding Mr. Crum's hearing.  Mr. Crum testified that he was deaf in his left ear (Tr. 449), but the ALJ stated in his decision that "[t]he claimant was able to understand normal conversation and testing certainly did not establish deafness in his left ear."  (Tr. 22).  In fact, testing by Dr. Charles J. Hieronymus in May, 2003 showed an 86.2 percent hearing loss in the left ear along with a 13.1 percent loss in the right ear.  (Tr. 192).  The physician commented that the loss was vocationally significant as a possible safety hazard. (Tr. 193).  Dr. Hoover noted that the plaintiff was hard of hearing in January, 2005 (Tr. 378), and the state agency employee who helped the plaintiff complete his disability report noted that Mr. Crum had "a lot of trouble hearing me" (Tr. 93). Social Security Ruling (SSR) 85-15 states that vocational impact of a hearing loss usually requires consultation with a vocational expert "to decide the effect on the broad world of work."  SSR 85-15, p. 7.

The decision will be remanded for further consideration.

This the 30th day of January, 2008.



**Signed By:**

_G. Wix Unthank_

**United States Senior Judge**

14